UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

In re:

KEVIN M. WIGGER,

        Debtor,
_____/

STATE TREASURER,

        Appellant,

v.                                       Case No. 1:19-cv-732

KEVIN M. WIGGER,                      Honorable Hala Y. Jarbou

        Appellee.
_____/

## OPINION

This is an appeal from a judgment in an adversary proceeding in the Bankruptcy Court for the Western District of Michigan. For the reasons herein, the appeal will be denied.

### I. Background

Kevin M. Wigger is a prisoner incarcerated at the Central Michigan Correctional Facility, where he is serving multiple sentences for criminal sexual conduct. The Muskegon County Circuit Court sentenced him in 2006. His earliest possible release date is in 2021.

In 2015, the Treasurer of the State of Michigan brought an action against Wigger in state court under the State Correctional Facility Reimbursement Act (SCFRA), Mich. Comp. Laws § 800.401 et seq., to recover the state's costs for incarcerating Wigger. That statute requires the Michigan Attorney General to secure reimbursement for these costs from the prisoner where the Attorney General has "good cause" to believe that the prisoner has "sufficient assets to recover not

less than 10% of the estimated cost of care of the prisoner or 10% of the estimated cost of care of the prisoner for 2 years, whichever is less . . . ." Mich. Comp. Laws § 800.403(2).

On December 8, 2015, following a "lengthy bench trial," the Muskegon County Circuit Court determined that the State was entitled to recover some of its costs from Wigger's individual retirement account (IRA) and from the proceeds of a judgment that Wigger had obtained against his son. (Final Order (Muskegon Cnty. Cir. Ct. Dec. 8, 2015), ECF No. 2-2, PageID.100.)

In 2017, Wigger filed for bankruptcy under Chapter 7 of the Bankruptcy Code. As part of those proceedings, Wigger brought an adversary action against the Michigan State Treasurer to discharge the debts and liens against him and his property. He claimed that his interests in the IRA and the judgment were exempt under 11 U.S.C. § 522. Specifically, Wigger sought to avoid the Treasurer's interests in his property under 11 U.S.C. § 522(f)(1)(A), which permits the debtor to avoid a "judicial lien" on the debtor's property, to the extent such lien "impairs an exemption to which the debtor would have been entitled under subsection (b) of this section[.]" *Id.*

The Treasurer claimed that its interest was a statutory lien, not a judicial lien, but the bankruptcy court ruled in Wigger's favor. The court determined that the Treasurer's interest in Wigger's property was a judicial lien. (Mem. of Decision & Order (W.D. Bankr. Apr. 16, 2019) ("Lien Decision"), ECF No. 2-4, PageID.230.) Next, the bankruptcy court avoided the Treasurer's lien on Wigger's IRA because that lien impaired an exemption for retirement funds, to which Wigger would be entitled under 11 U.S.C. § 522(d)(12). (Mem. of Decision & Order (W.D. Bankr. Aug. 26, 2019) ("Avoidance Decision"), ECF No. 2-2, PageID.21.) Finally, the bankruptcy court avoided the Treasurer's lien on the judgment proceeds to the extent that the lien impaired an exemption for property not exceeding $13,100 in value, to which Wigger would be entitled under 11 U.S.C. § 522(d)(5). (Avoidance Decision, PageID.23-24.)

2

The Treasurer also asked the bankruptcy court not to discharge any of Wigger's debt for costs incurred by the State after the date that Wigger filed his petition for bankruptcy. The Treasurer claimed that its post-petition costs for incarcerating Wigger did not exist when he filed for bankruptcy; thus, they did not constitute a "claim" that could be discharged in bankruptcy proceedings. The bankruptcy court rejected this argument, concluding that the Treasurer's claim against Wigger's property as of the date that Wigger filed for bankruptcy included the state's post-petition costs, which the court characterized as "unmatured, contingent, and unliquidated costs." (Avoidance Decision, PageID.26.)

The Treasurer now appeals these decisions, arguing that the bankruptcy court improperly avoided its lien on Wigger's property. Specifically, the Treasurer contends that (1) a lien under SCFRA is not subject to avoidance because it is a statutory lien rather than a judicial lien, and (2) even if the lien is judicial, the Treasurer is entitled to recover the post-petition costs of Wigger's incarceration.

## II. Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1334 and the Court's order referring all cases under Title 11 to the bankruptcy court. W.D. Mich. L. Civ. R. 83.2. The Court also has jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy judges in proceedings referred to them. 28 U.S.C. § 158(a)(1). The adversary proceeding in this case concluded with a judgment entered on August 26, 2019.

## III. Standard of Review

The bankruptcy court's conclusions of law are reviewed *de novo*. *Rowell v. Chase Manhattan Auto. Fin. Corp. (In re Rowell)*, 359 F. Supp. 2d 645, 647 (W.D. Mich. 2004). The Court applies the clearly erroneous standard when reviewing the bankruptcy court's findings of fact. *Stamper v. United States (In re Gardner)*, 360 F.3d 551, 557 (6th Cir. 2004). "A finding of

3

fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

## IV. Analysis

### A. Judicial Lien / Statutory Lien

The Treasurer argues that its lien on Wigger's assets is not dischargeable under 11 U.S.C. § 522(f) because it is a statutory lien, not a judicial one. A statutory lien is a lien

> arising solely by force of a statute on specified circumstances or conditions . . . , but does not include [a] security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53). A judicial lien is a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

A mechanic's lien is a clear example of a statutory lien. Michigan law provides that a mechanic "shall have a lien" on an "article of value . . . [w]hen any person shall deliver [that item] to any mechanic" for repair. Mich. Comp. Laws § 570.186. The amount of the lien is the "just value of the labor and skill applied" to the item. *Id.* The mechanic can enforce the lien by retaining possession of the item and, if the charges are not paid, sell the item to recover the amount of the lien. *Id.* § 570.187. In other words, the statute alone creates a lien on specific property upon the occurrence of a particular circumstance: delivery of an item to a mechanic for repair.

In contrast, as noted by the bankruptcy court, nothing in the text of SCFRA indicates that it automatically creates a lien when "specified circumstances or conditions" are satisfied. Instead, the SCFRA provides a set of procedures that the state must follow in order to "secure reimbursement" for the state's costs of incarceration. *See* Mich. Comp. Laws § 800.403(2). First,

the director of the Michigan Department of Corrections must send the attorney general a report of the prisoner's assets and an estimate of the "total cost of care for that prisoner." Mich. Comp. Laws § 800.402. Next, the attorney general must determine whether there is "good cause" to believe that a prisoner has sufficient assets to recover. *Id.* § 800.403. If good cause is found, the attorney general "may" file a complaint in circuit court asking for reimbursement of its costs. *Id.* § 800.404(1). The prisoner then has an opportunity to respond to the complaint by showing "good cause" why the state's request should not be granted. *Id.* § 800.404(2). The circuit court must hold a hearing on the state's request. If the court finds that the prisoner has assets which "ought to be subjected to the claim of the state," the court will issue an order requiring that proceeds from those assets be applied toward reimbursement of the state. *Id.* § 800.404(3). Among other things, the court must take into consideration "any legal obligation of the defendant to support a spouse, minor children, or other dependents and any moral obligation to support dependents to whom the defendant is providing or has in fact provided support." *Id.* § 800.404(5). According to the Michigan Court of Appeals, the latter determination requires an "exercise [of] discretion." *State Treasurer v. Wilson*, 388 N.W.2d 312, 315 (Mich. Ct. App. 1986).

      The bankruptcy court correctly concluded that the foregoing procedures indicate that the state's right to reimbursement under the SCFRA does not arise "solely by force of the statute." Rather, the state must secure that right by commencing court proceedings and obtaining a court order. If the Treasurer had not filed its complaint for reimbursement, or was unable to show that Wiggers had sufficient assets for the state to recover, or if the court had found that Wigger's assets are not those which ought to be subjected to the state's claim, then the state would not be able to reach Wigger's assets. Put another way, the state's lien arose through a "judgment, levy,

sequestration, or other legal or equitable process or proceeding," 11 U.S.C. § 101(36), which makes it a judicial lien, not a statutory one.

The Treasurer relies on *Auditor General v. Hall*, 1 N.W.2d 516 (Mich. 1942), to argue that the SCFRA creates a statutory lien, but that case supports the bankruptcy court's conclusion. In *Auditor General*, the Michigan Supreme Court opined that the precursor to SCFRA creates a "statutory obligation of a prisoner to pay for his keep and maintenance, if he has a sufficient estate[.]" *Id.* at 518. In isolation, that statement suggests that the SCFRA itself creates a lien. But the court also noted that "[t]he law does not impose a personal judgment or liability against the prisoner, but provides for establishing a lien upon his estate *by an ancillary proceeding in rem*." *Id.* (emphasis added). In other words, the "ancillary proceeding" establishes the lien, not the statute on its own. That being the case, the lien is a judicial one.

The Treasurer also relies on *State Treasurer v. Snyder*, 823 N.W.2d 284 (Mich. Ct. App. 2011), which held that the State could reach the proceeds of an insurance policy that the prisoner received. The prisoner attempted to disclaim his interest in the proceeds so that the state could not take them; however, the court held that he could not do so because the SCFRA applies to a prisoner's "assets," a term whose definition includes property "'belonging or due a prisoner . . . .'" *Id.* at 289 (quoting Mich. Comp. Laws § 800.401a(a)). Accordingly, "acceptance of the receipt of the asset is irrelevant; . . . the property must merely be due a prisoner." *Id.* Based on this premise, the Treasurer contends that, because the SCFRA gives it an interest in a prisoner's present and future assets from the moment of the prisoner's conviction, the SCFRA creates a statutory lien.

The Treasurer's argument is not persuasive. While it is true that the SCFRA gives the state an *interest* in assets that are "due" to a prisoner even before the state commences legal proceedings, it does not necessarily follow that the state's interest is a *lien*. On the contrary, the Court agrees

with the bankruptcy court that the language and structure of SCFRA indicate that the statute gives the state a *claim* for reimbursement from the prisoner's assets, but the state must secure that claim by following the court process laid out in the SCFRA. The court's order at the end of that process converts the state's claim into a lien on the specific assets identified by the court. Until that time, the prisoner's property is unencumbered.

Next, the Treasurer argues that the SCFRA does not create a judicial lien because it does not contain the requirements set forth in Michigan's judgment lien statute, Mich. Comp. Laws § 600.2801 et seq. Among other things, the judgment lien statute requires a notice of judgment lien and recording of the lien with the register of deeds, *see* Mich. Comp. Laws § 600.2803, whereas the SCFRA contains no such requirements. However, this argument assumes that all "judicial liens," as that term is defined in the Bankruptcy Code, are "judgment liens" as defined by state law. That is not the case. A "judgment lien" is "an encumbrance in favor of a judgment creditor against a judgment debtor's interest in real property[.]" Mich. Comp. Laws § 600.2801. In contrast, a judicial lien under the Bankruptcy Code is not limited to interests in real property. *See United States v. Dishman Independent Oil, Inc.*, 46 F.3d 523, 526 n.3 (6th Cir. 1995) (judicial lien on personal property of debtors); *In re Tittabawassee Inv. Co.*, 831 F.2d 104, 106 (6th Cir. 1987) (judicial lien on liquor license). Accordingly, so long as the lien arises from a "legal or equitable process or proceeding," it satisfies the definition of judicial lien.

The Treasurer is right to point out that the existence of a judicial enforcement proceeding does not necessarily make a statutory lien a judicial one. For example, a mechanic's lien does not become a judicial lien simply because the holder of the lien has obtained a judgment to enforce it. *See In re Howe*, No. 16-32083, 2018 Bankr. LEXIS 1787, at *6 (Bankr. N.D. Ohio June 15, 2018). That situation is distinguishable from the present case. As discussed above, there is no question

7

that a mechanic's lien is a statutory lien. According to the terms of Michigan's mechanic's lien statute—and the Ohio mechanic's lien statute discussed in *Howe*—a mechanic's lien exists *before* the commencement of any legal proceedings. Moreover, the statute provides an enforcement mechanism that the lienholder can exercise without resort to the courts. The use of legal proceedings to enforce that lien does not alter the source of the lien.

The SCFRA is different. It does not create a lien on its own. A court must first determine that the prisoner can make sufficient reimbursement. The court proceedings to establish the state's right to the prisoner's assets are not proceedings to enforce a pre-existing lien. Indeed, the statute itself contemplates separate enforcement measures *after* the court has issued its judgment. *See* Mich. Comp. Laws § 800.404a(3) (prohibiting enforcement of "any judgment obtained under this act by means of execution against the homestead of the prisoner"). Thus, the legal proceeding is what creates the lien, not the statute itself. The Treasurer's arguments to the contrary are not persuasive.

### B. Post-Petition Costs

The Treasurer also argues that, even if the state's lien is a judicial one, the bankruptcy court should have limited the discharge of Wigger's debt to the pre-petition costs of his incarceration. The Treasurer contends that its claim for post-petition costs was "unmatured, unliquidated, or contingent" at the time that Wigger filed for bankruptcy, and therefore did not fall within the definition of a "claim" that can be discharged in bankruptcy. (*See* Treasurer's Br. 15-16 (citing 11 U.S.C. § 101(5)), ECF No. 4.)

The bankruptcy court rejected this argument because "[t]he statutory definition of 'claim' [in the Bankruptcy Code] is broad enough to include unmatured, contingent, and unliquidated claims such as the Treasurer's non-recourse claim against the Debtor's exempt property . . . ." (Avoidance Decision, PageID.27.) Indeed, as the bankruptcy court noted, Congress adopted "the

8


broadest available definition of claim[.]" *Johnson v. Home States Bank*, 501 U.S. 78, 84 (1991) (quotation marks omitted). Furthermore, the Treasurer itself sought reimbursement for the future costs of Wigger's incarceration when filing its SCFRA claim in state court, and the state court granted relief on that claim. (*See* Avoidance Decision, PageID.26.) This Court is not persuaded that the bankruptcy court should have construed the Treasurer's claim more narrowly in the bankruptcy proceedings.

In summary, the bankruptcy court correctly decided the issues that the Treasurer has raised on appeal. Accordingly, the Court will enter a judgment affirming its decisions.

Dated:   November 16, 2020               /s/ Hala Y. Jarbou
                                         HALA Y. JARBOU
                                         UNITED STATES DISTRICT JUDGE